UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK PAUL URIAS,<br><br>Defendant. | Case No. 4:17-cr-00181-DCN-3<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Frank Paul Urias' Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 533. The Government has filed an opposition to Urias' Motion. Dkt. 535. Urias filed a reply and the matter is ripe for the Court's consideration. Dkt. 536.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court finds good cause to DENY Urias' Motion.

## II. BACKGROUND

On December 16, 2019, after pleading guilty to Distribution of Methamphetamine, Urias was sentenced to eighty-four (84) months imprisonment and five year's supervised

release. Dkt. 526. Urias is currently incarcerated at Federal Correctional Institution ("FCI") Terminal Island in California. Urias has served approximately 37 months of his sentence.[1]

On May 13, 2020, Urias submitted a request to Warden Ponce of FCI Terminal Island asking to be placed on home confinement. The reason for Urias' request was his concern that he would continue to have COVID-19—because he already had it—or re-contract COVID-19 in the future. Dkt. 536, at 2-3.[2] Urias explained that his hypertension, Hepatitis C, diabetes, and obesity put him at increased risk for serious complications or death from COVID-19. Dkt. 533, at 3. Warden Ponce of FCI Terminal Island denied Urias' request for home confinement on May 20, 2020. Dkt. 533-1, at 2.

Urias filed a Motion for Compassionate Release with the Court on June 8, 2020. He again cited his medical conditions, the fact he'd already contracted the virus, and the high infection rate (at that time at least) amongst inmates at FCI Terminal Island. Dkt. 533.

In short, though Urias has already contracted the virus, he fears dying from COVID-19 due to the aforementioned medical issues that increase his risks. The Government opposes Urias' request.

---

[1] The briefs contain a discrepancy regarding Urias' time in custody. As of June, when the briefings was submitted to the Court, Urias stated he has served 34 months of his 84-month sentence. Dkt. 533, at 3. The Government stated that Urias has served 48 months. Dkt. 535, at 2. Based upon the fact that Urias was arrested (and served with a warrant in this case) on July 28, 2017, the Court agrees with Urias that the correct calculation is closer to 37 months (adding time since June) as opposed to 50 months. *See* Dkt. 41.

[2] Urias was tested for COVID-19 on April 24, 2020. Dkt. 533, at 3. He was diagnosed as positive for COVID-19 the following day. Dkt. 533-1, at 2. Urias was not retested as of the time of briefing to see if he has recovered. Dkt. 536, at 2-4. By May 8, 2020, Urias was asymptomatic and reintegrated with the rest of the inmate population. Dkt. 535, at 3.

## III. LEGAL STANDARD

Urias seeks compassionate release under the First Step Act ("FSA"), newly amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.[3] In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id.* Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[4] *Id.* If the latter criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to

---

[3] "Prior to the passage of the FSA, only the Director of the Bureau of Prisons . . . could file a motion for compassionate release, and that very rarely happened." *United States v. Shields*, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (quoting *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The FSA amended 18 U.S.C. § 3582(c)(1)(A) to permit modification of a term of imprisonment upon motion of the Director of the BOP or upon motion of the defendant after the defendant has exhausted his/her administrative rights. FSA, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[4] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

Case 4:17-cr-00181-DCN   Document 539   Filed 09/15/20   Page 4 of 11

appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). In addition, "[e]xhaustion occurs when the BOP denies a defendant's [motion for compassionate release]." *United States v. Mondaca*, No. 89-cr-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

The Government disputes that Urias exhausted his administrative remedies in this case. Dkt. 535, at 9. Given the BOP's denial of Urias' request, the Court finds that Urias has exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Having determined that Urias exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Urias' sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Urias bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 3:13-cr-0044-BR, 2020 WL 1673440, at 3 (D. Or. Apr. 6, 2020).

Before passage of the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

MEMORANDUM DECISION AND ORDER - 4

However, the Sentencing Commission "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). Because this is no longer the law with the FSA, which allows defendants to seek relief directly from the court, this "leaves district courts in a conundrum." *Id.* (explaining that Congress now allows district courts to grant petitions "consistent with the applicable policy statements" from the Sentencing Commission, although the Sentencing Commission "has not made the policy statements for the old regime applicable to the new one").

A growing number of district courts have concluded that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G. § 1B1.13] warrant compassionate release." *Rodriguez*, 411 F. Supp. 3d at 682 (collecting cases). However, other courts have concluded "a judge may not stray beyond the specific instances listed in [U.S.S.G. § 1B1.13]." *Mondaca*, 2020 WL 1029024, at *3 (citations omitted); *see also United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (stating U.S.S.G. § 1B1.13's descriptions of extraordinary and compelling reasons "remain current, even if references to the identity of the moving party are not").

The Court need not decide the issue because Urias suggests one of the specific scenarios set out in the Sentencing Commission's policy statement applies here. *Brown*, 411 F. Supp. 3d at 451 (district courts "still must act in harmony with any sentencing policy

guidelines that remain applicable and the § 3553(a) factors").

Specifically, Urias seeks compassionate release under the "medical condition" scenario in subdivision (A) of U.S.S.G. 1B1.13, Application Note 1.[5] Urias argues that his hypertension, Hepatitis C, diabetes, and obesity, in conjunction with the COVID-19 pandemic and high rate of contagion at FCI Terminal Island, constitute extraordinary and compelling reasons for his release. Dkt. 533. Urias further contends that having already contracted COVID-19 with mild symptoms does not mean that he will not contract the virus again, nor does it mean his symptoms would be mild again. *Id*. at 5-6. Moreover, Urias cites academic materials stating that immunity appears to diminish quickly, showing there is a high potential of re-contracting the virus. *Id*. at 7.

The Government counters that Urias has not met his burden of demonstrating

---

[5] The "medical condition of the defendant" may constitute an extraordinary and compelling reason for release where:

(A)   Medical Condition of the Defendant.—

(i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is—

(I)   suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1(A).

extraordinary and compelling reasons to support compassionate release because Urias has already contracted and recovered from the virus. Dkt. 535, at 9. Thus, release will not necessarily relieve him from the risk of contracting the virus. *Id*. The Government states that Urias likely has antibodies that can protect him and he has proven his ability to survive the virus without severe repercussions. *Id*. Additionally, the Government cites material that subsequent infections are typically less severe. *Id*. at 9-10. The Government adds that Urias is a generally healthy man in his late forties and disputes that Urias has any increased risk factors, as hepatitis is not one of the identified risk factors. *Id*. at 10.

In Urias' reply to the Government's brief, he asserts that more than 700 inmates have tested positive at FCI Terminal Island and there is no evidence that Urias has fully recovered. Dkt. 536, at 4. Additionally, Urias replies that the Government has not disputed any of Urias' diagnoses that put him at increased risk when contracting COVID-19. *Id*. Urias asserts these circumstances are extraordinary and compelling enough to warrant Compassionate Release to at home probation. *Id*. at 5.

After a careful review of Urias' medical records and the briefs, the Court finds that Urias has not met his burden of showing extraordinary and compelling reasons for Compassionate Release. While the Court understands Urias' concerns, it makes this determination based upon the current low numbers of COVID-19 cases at FCI Terminal Island, the fact that Urias already contracted the virus and had mild symptoms, and an overall lack of evidence supporting Urias' contention that his various diagnoses put him at an increased risk.

Concern for the possibility of exposure on its own does not meet extraordinary and

compelling criteria. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). While a large number of inmates *previously* tested positive for COVID-19, the current reports indicate that only three inmates and six staff are testing positive at FCI Terminal Island and that 654 inmates and staff have recovered. COVID-19 CASES, https://www.bop.gov/coronavirus/ (last visited August 11, 2020). With these low numbers, there is no evidence that Urias would be less likely to contract the virus again if he were released. *See United States v. Singui*, 2020 WL 2523114, at *4 (C.D. Cal. May 12, 2020) (denying compassionate release to inmate with diabetes, high blood pressure, and high cholesterol; observing that "there is little evidence that [the defendant] is presently at greater risk of contracting the virus at MDC than in the general population. . . .). Based on current infection numbers at FCI Terminal Island, Urias' potential for exposure would likely *increase* were the Court to release him.

Additionally, an inmate who has already contracted the disease does not have an extraordinary or compelling case for such release. *See Cabrera*, 2020 WL 2549941, at 4 (denying motion to defendant who tested positive for COVID-19 at FCI Terminal Island "[b]ecause [defendant] remains asymptomatic despite testing positive for COVID-19, the risk of him suffering severe complications from the virus is significantly diminished compared to others in the BOP who have either not contracted the virus or who have contracted the virus and exhibited symptoms or complications"). Similar to the defendant in *Cabrera*, Urias' medical records show that he tested positive for COVID-19, but did not experience any negative or extreme symptoms, and has healthfully reintegrated with other inmates after quarantining. Dkt. 535-2. In fact, the medical records show that within two

weeks of being diagnosed, Urias denied experiencing even the mildest temporary symptoms, loss of taste and smell. *Id*. Having already contracted COVID-19 without a negative impact is not compelling evidence for Compassionate Release.

Moreover, the medical records before the Court only reflect that Urias has hepatitis C. Neither party submitted evidence indicating Urias has been diagnosed with and/or is currently being treated for hypertension, diabetes, or obesity—three health concerns Urias claims put him at an increased risk for serious harm or death if he were to contract the virus again. Dkt. 535-1, Dkt. 535-2, Dkt 535-3.

While the CDC does list obesity and type 2 diabetes as underlying conditions that would "increase" the risk of severe illness for individuals who contract COVID-19, hypertension and type 1 diabetes are only listed as conditions which "might" increase the severity of any attending illness.[6] Critically, hepatitis C—the one disease the Court actual knows Urias suffers from—is *not* listed as a condition that would increase the risk of severe illness from COVID-19. *Id*.

The lack of evidence regarding Urias' diagnoses that the CDC identified as risks, Urias' lack of severe symptoms when he tested positive, and the current low spread in FCI Terminal Island, do not demonstrate extraordinary and compelling reasons due to COVID-19 alone.

---

[6] *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited August 11, 2020).

Finally, the Government asserts there are compelling reasons <u>not</u> to release Urias at this time. Specifically, the Government argues Urias is a dangerous person who distributed large amounts of methamphetamine throughout Idaho and that these behaviors pose a substantial risk to the community. Dkt. 535, at 10. The Government also notes that Urias has not identified a solid release plan for home confinement, nor has he shown evidence of sincere rehabilitation. *Id.* The Court agrees that these are compelling reasons for denying Urias' motion.

While the Court acknowledges Urias' concerns about the spread of COVID-19 given the previous high number of infections at FCI Terminal Island and Urias' own positive testing for the virus in April, the strict precautions being taken by the BOP have mitigated the spread of the virus among inmates and resulted in a decrease of active cases and an increase in health and safety.[7] Frankly, in light of BOP's mitigation strategies, Urias will likely be safer remaining at FCI Terminal Island than were he released to home confinement. In addition, the Court finds that Urias continues to pose a threat to the community and should not be released at this time.

In sum, the Court finds that Urias has not met his burden of showing any extraordinary and compelling reason warranting his release. Accordingly, the Court must DENY Urias' motion. 18 U.S.C. § 3582(C)(1)(A).[8]

---

[7] *See A BOP COVID-19 Overview: BOP's COVID-19 Response*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited August 11, 2020).

[8] In light of this holding, the Court does not consider the 18 U.S.C. § 3553(a) sentencing factors. 18 U.S.C. § 3582(c)(1)(A).

# V. ORDER

The Court HEREBY ORDERS:

1.  Urias' Motion for Compassionate Release (Dkt. 533) is DENIED.

DATED: September 15, 2020

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 11